ANTONY WILLIAMS AMES, AS REPRESENTATIVE OF THOSE UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING LLOYD'S PROFESSIONAL INDEMNITY POLICY NUMBER 0110147/0146036, WALBROOK INSURANCE COMPANY, WINTERTHUR SWISS INSURANCE COMPANY, SOUTHERN AMERICAN INSURANCE COMPANY, MUTUAL REINSURANCE COMPANY LIMITED, ST. KATHERINE INSURANCE COMPANY LIMITED, LONDON & EDINBURGH GENERAL INSURANCE COMPANY LIMITED, BERMUDA FIRE & MARINE INSURANCE COMPANY LIMITED, EXCESS INSURANCE COMPANY LIMITED, TUREGUM INSURANCE COMPANY, UNIONAMERICA INSURANCE COMPANY LIMITED, YASUDA FIRE & MARINE INSURANCE COMPANY (U.K.) LIMITED, GUARDIAN ROYAL EXCHANGE ASSURANCE, TRIDENT GENERAL INSURANCE COMPANY LIMITED, BELLEFONTE INSURANCE COMPANY, TERRA NOVA INSURANCE COMPANY LIMITED, ASSICURAZIONI GENERALI, T. FRANK BOOTH, CLARK C. BURRITT, JR., THOMAS J. CRIBBIN, ROBERT E. EDMONDS, JIMMY D. GAMBILL, OBA T. HANNA, JR., CHRISTOPHER J. MORAN, JOHN R. PUGH, C. ROBERT SURRATT, HARRY L. LAING, BILLY G. CLODFELTER, BOBBY R. CURTIS, KENNETH H. EIDSON, BILLY E. GREEN, STERLING L. HUDSON, ASHLEY S. JAMES, JR., FREDERICK E. LEWIS, RICHARD H. LLEWELLYN, MILDRED MASHBURN, JOHN L. MATTHEWS, BERNARD B. MORELAND, WILLIAM H. STONE, JR., THOMAS R. WOODARD, BILLY MITTELSTADT, H. JAMES TOLAND, JR., S. BEN HERBERT, GEORGE H. ROGERS, JR., JAMES A. SHAVER, C.

Ames v. Continental Casualty Co.

EDWARD BARGER, CHARLES L. EZELL, III, JAMES D. FUSSELL, ROBERT P. McNAIRY, JOE F. OGBURN, EARL H. WARD, CLAUDE F. PHILLIPS, GALE D. EIDSON, M. T. DANIEL, O. KENNETH SPAINHOUR, BENNY F. STROUPE, GORRELL L. TATE, DICK R. WARFFORD, JULIAN C. KNOTT, SAM B. ANDREWS, SAMUEL R. HENDERSON, D. FREDERICK WEIR, JR., KENNETH F. WINTON, THOMAS G. HORNE, JOHN S. TOLBERT, GERALD C. BURKE, RALPH M. HUNGERPILLER, W. GLENN JENKINS, PAUL R. OKEN, JOE M. KNOWLES, BRICE L. HOLLAND, GEORGE D. HARRIS, JAMES D. MOULTON, CARLTON E. TAYLOR, JAMES L. DALLAS, WESLEY W. TAYLOR, A. K. ANDERSON, MARLIN P. ALT, MENSEL D. DEAN, JR., JAMES G. SPRINKEL, MERVIN B. STICKLEY, ROBERT C. PEERY, C. PHILIP AVERY, JR., FORREST W. BROWN, JR., CARL R. ELLENBURG, JAMES E. HARRIS, JOHN W. INMAN, C. FOSTER JENNINGS, O. RALPH PUCCINELLI, JR., JOHN W. SANDERSON, JAMES A. SATTERWHITE, JESSE W. TURNER, J. GORDON HARMAN, CARROLL N. PEARSON, ROBERT L. CARMODY, JUDAH H. EVER, JAMES WILSON, MELVIN FANCHER, ALBERT H. CRIPPEN, JR., ORIAN P. WELLS, JR., CARL R. BRUNO, JOSEPH N. GUARIGLIA, JAMES H. MULLER, FRANK BAUERSCHMIDT, WILLIAM J. CRAVEN, JAMES C. NEILL, M. ROSS LANE, CHARLES M. BRABSON, CLIFFORD S. ENGLISH, JR., ROBERT E. LEECH, GEORGE F. McKNIGHT, WILLIAM H. TERRY, MARY G. WEINSTEIN, AND A. M. PULLEN AND COMPANY, A GENERAL PARTNERSHIP v. CONTINENTAL CASUALTY COMPANY, DEFENDANT

No. 8518SC587

(Filed 4 March 1986)

**1. Insurance § 150— accounting malpractice—occurrence policy—canceled 1971—valid**

In an action to determine which of two insurance companies was required to provide coverage for a professional malpractice claim based on acts and omissions before 1971, the trial court properly concluded that exclusions for other insurance providing payment in Lloyd's subsequent policy was applicable because Continental's occurrence policy was still valid and existing even though no premiums were being paid and the lack of payment of the claim under the Continental policy was due to Continental's wrongful and unjustified refusal to pay.

**2. Insurance § 96.1— duty to defend—timely notice**

Continental was not relieved of its duty to defend by untimely notice where Pullen, the insured, allowed attorneys for Travelers to examine certain work papers in 1976 which pertained to financial statements issued between 1967 and 1973; Pullen notified Lloyd's of a possible suit by Travelers on 4 January 1977; Travelers filed suit on 14 January 1977; Pullen became aware that Continental policies might also cover the Travelers claims; Pullen notified Travelers on 15 September 1977; there was at most a nine-month delay in giving Continental notice; the Continental policy had been canceled for over five

**Ames v. Continental Casualty Co.**

years and no premiums had been paid since cancellation; the managing partner responsible for insurance at Pullen had become managing partner after the Continental policy was canceled; the Travelers suit was a very complex case of alleged professional malpractice involving large numbers of documents; discovery lasted for months; and Pullen sent written notification of the Travelers suit to Continental immediately upon becoming aware of the possible coverage.

**3. Insurance § 150— unjustified refusal to defend—estopped from denying coverage**

Continental was estopped from denying coverage and was obligated to pay an amount in settlement where it had had the opportunity to raise defenses during litigation but unjustifiably refused to defend.

**4. Insurance § 150— action between two insurance companies—settlement of underlying claim by one company—conclusion that settlement reasonable—supported by evidence**

In an action between two insurance companies to determine who was responsible for a claim by Travelers Indemnity Company against Pullen and Company, there was ample evidence to support the conclusion of the trial court that the settlement of the Travelers action by Lloyd's was reasonable and made in good faith where Travelers brought suit claiming 80 million dollars in losses suffered in reliance upon allegedly false and misleading financial statements issued by Pullen between 1967 and 1973; Continental stated in its brief that the losses attributable to 1971, the last year of Continental's coverage, totaled 11.6 million dollars; Lloyd's settled the claim for 5.25 million dollars; there was no evidence of any bad faith by Lloyd's; and all the evidence showed that Lloyd's vigorously pursued the defense of Pullen.

**5. Insurance § 150— action between two insurance companies—court's division of obligations—no error**

In an action to determine coverage under professional malpractice insurance policies in which Lloyd's had settled the underlying claim, the trial court did not err by failing to pro-rate Continental's obligations at one-eleventh of the losses attributable to acts or omissions occurring in 1971 where Lloyd's policy only provided excess coverage for acts and omissions occurring before December 1971, so that Continental provided primary coverage for that period, and Continental acknowledged that the losses attributable to 1971 could reasonably total 11.6 million dollars.

**6. Insurance § 150— professional malpractice claim—action between two insurance companies—defense costs equally divided**

In an action between two insurance companies to determine responsibility for a professional malpractice claim which had been settled by Lloyd's, the trial court erred in its apportionment of defense costs where the complaint against the insured alleged damages as a result of financial statements produced by the insured during the coverage period of Continental's policy and also alleged damages arising from the period of Lloyd's policy coverage. Both insurers had a duty to defend and equity dictates that the defense costs be shared equally.

APPEAL by defendant and cross-appeal by plaintiffs from *De-Ramus, Judge*. Judgment entered 23 October 1984 in Superior Court, GUILFORD County. Heard in the Court of Appeals 21 November 1985.

This appeal arises out of a declaratory judgment action filed on 3 June 1980 to determine coverage under professional malpractice insurance policies issued by defendant Continental Casualty Company (Continental) to plaintiff A. M. Pullen and Company, certified public accountants (Pullen).

Continental issued to Pullen a series of professional liability policies with a liability limit of one million dollars ($1,000,000.00). Pullen terminated its coverage with Continental effective 30 November 1971. Pullen replaced the Continental coverage with a professional indemnity policy issued by underwriters at Lloyd's, London (referred to collectively as Lloyd's). The Lloyd's policy carried a policy limit of ten million dollars ($10,000,000.00) and it remained in effect from 1 December 1971 throughout all relevant periods in the lawsuit.

The Continental policy is known generally as an "occurrence" policy. Continental agreed to pay all sums which Pullen became legally obligated to pay as damages because of any act or omission which occurred during the policy period.

Upon cancellation of the Continental policy, Lloyd's issued to Pullen what is known generally as a "claims made" policy. Lloyd's agreed to indemnify Pullen against any claim made against it during the coverage period regardless of when the alleged cause of action arose.

On 14 January 1977 Travelers Indemnity Company (Travelers) filed a civil action in the Superior Court of Fulton County, Georgia. In that action, Travelers alleged it had relied to its detriment upon false and misleading financial statements issued by Pullen between 1967 and 1973.

Pullen and Lloyd's filed a complaint on 3 June 1980 instituting the present action. In that complaint plaintiffs alleged that the policies Continental issued to Pullen covered acts or omissions forming the basis of the Travelers' lawsuit. Plaintiffs sought a declaration that Continental had an obligation to defend

the Travelers' action and to pay any judgment rendered against Pullen to the full extent of the Continental policy limits.

The Travelers' action was settled in September 1982 upon the payment of $5,250,000.00 to Travelers. Lloyd's defense costs totalled $724,659.52. Continental did not participate in the defense or settlement of the Travelers' action.

On 23 October 1984, after a trial without a jury, the court entered judgment in the present action ordering Continental to pay plaintiffs the full amount of its policy limits ($1,000,000.00, minus the $1,000.00 deductible). The court also ordered Continental to pay Lloyd's $138,030.40 as contribution toward defense costs of the Travelers' suit.

From the order of the trial court, defendant appeals and plaintiffs cross-appeal.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by L. P. McLendon, Jr. and John L. Sarratt, for plaintiffs.*

*Henson, Henson & Bayliss, by Perry C. Henson and Paul D. Coates, for defendant.*

ARNOLD, Judge.

I.

[1] Continental first contends that the trial court erred in concluding that the Lloyd's policy provided "excess" coverage for acts and omissions occurring before December 1971. Assuming its policies covered Travelers' underlying claims, Continental does not dispute that it is a primary insurer for occurrences in 1971. Continental argues instead that Lloyd's is also a primary carrier for acts and omissions occurring in 1971, and that any obligations owed to Pullen should have been shared on a *pro rata* basis by Continental and Lloyd's. We disagree.

The controversy centers upon the following section of the Lloyd's policy:

III. EXCLUSIONS

This policy excludes:

. . . .

2. any claim which is insured by any other existing valid policy under which payment of the claim is actually made, except in respect of any excess beyond the amount or amounts of such payments under such other policy. . . .

Continental alleges the facts in this case do not trigger the exclusion, and therefore Lloyd's cannot claim benefit under this clause. Continental asserts that its policy is not "existing" within the meaning of the exclusion, claiming that its policy was "a previously existing policy" rather than an "existing valid policy." This is not a proper distinction. Continental's policy provided coverage if the act or omission occurred during the policy period. Continental's expert witness Mr. Perry Fuller testified that theoretically an "occurrence" policy would provide coverage forever, subject of course to any applicable statute of limitations. So, even though premiums were no longer being paid toward the Continental policy, that policy was still providing coverage for acts or omissions occurring before December 1971. Thus, that policy is valid and "existing" within the meaning of the exclusion.

Continental also asserts its policy is not one "under which payment of the claim was actually made." Payment has not been made under the Continental policy simply because Continental has denied coverage and refused to pay. For reasons stated later in this opinion, the trial court properly found that this denial of coverage was wrongful and unjustified. An insurer cannot avoid its liability by refusing to defend or pay a claim for which it is liable under the terms of its policy. An insurer cannot profit at the expense of another by its own breach of contract. *See Maryland Casualty Co. v. Marquette Casualty Co.*, 143 So. 2d 249 (La. App. 1962). The trial court properly concluded that the exclusion in the Lloyd's policy is applicable to this action. Under that exclusion, Lloyd's provides only "excess" coverage for acts and omissions occurring before December 1971.

II.

[2] Continental next contends that the trial court erred in retroactively applying the decision of *Great American Insurance Co. v. Tate Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981), to the facts in this case. In *Great American* the court rejected a strict contract construction of the notice requirement contained in insurance policies and overruled the *Peeler-Muncie-Fleming* line

of cases. *Fleming v. Insurance Co.*, 261 N.C. 303, 134 S.E. 2d 614 (1964); *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960); *Peeler v. Casualty Company*, 197 N.C. 286, 148 S.E. 261 (1929). Plaintiffs argue in rebuttal, among other things, that even under the law prior to *Great American*, Continental was not relieved of its obligation to defend Pullen. We need not address the question of the retroactive application of *Great American*. We agree with plaintiffs that even under the more restrictive prior law Continental was obligated to defend Pullen, and its denial of coverage was wrongful and unjustified.

The Continental policy required that notice of any act or omission which might be expected to be the basis of a claim or suit be given by the insured "as soon as practicable." "As soon as practicable" under the *Muncie* line of cases means to give notice within a reasonable time. *Muncie*, 253 N.C. at 82, 116 S.E. 2d at 480 (Parker, J., concurring); *Trust Co. v. Insurance Co.*, 44 N.C. App. 414, 261 S.E. 2d 242 (1980). Continental claims the notice it received was untimely, thus relieving it from any alleged duty to defend.

What constitutes a reasonable time depends upon the facts and circumstances of each particular case. *Harris v. Insurance Co.*, 261 N.C. 499, 135 S.E. 2d 209 (1964); *see also* Annot., 18 A.L.R. 2d 443, § 16 (1951). The facts relating to the notice given Continental are not in dispute. In December 1976 Pullen allowed attorneys for Travelers to examine certain work papers pertaining to financial statements issued between 1967 and 1973. Pullen notified Lloyd's of a possible suit by Travelers in a letter dated 4 January 1977. Travelers filed and served its complaint in the Fulton County Superior Court in Atlanta, Georgia on 14 January 1977. During discovery in that case, Pullen became aware that the Continental policies might also cover the Travelers' claims. Pullen notified Continental of the Travelers' action by letter dated 15 September 1977.

What is a reasonable time, when the facts are not in dispute, as here, is a question of law to be decided by the Court. *Muncie*, 253 N.C. at 83, 116 S.E. 2d at 480 (Parker, J., concurring); *Trust Co.*, 44 N.C. App. at 421, 261 S.E. 2d at 246. The trial court found that the notice given Continental was untimely, stating that Pullen negligently failed to investigate Continental's possible

coverage and exhibited a lack of diligence in failing to comply with the requirements of timely notice. The evidence does not support the trial court's finding of negligence and lack of diligence. The conclusion of untimely notice was error.

The evidence indicates that at the earliest, Pullen was aware of a potential suit sometime in December 1976—providing at most a nine-month delay in giving Continental notice. The Continental policy had been cancelled for over five years and no premiums had been paid on this policy since its cancellation. Mr. Thomas J. Cribbin, the managing partner of Pullen, was responsible for handling the firm's insurance matters. He did not become managing partner until 1 November 1976, and thus had had no contact with Continental. The Travelers' suit was a very complex case of alleged professional malpractice involving large numbers of documents. The discovery in that case lasted for months. During discovery Pullen learned that the Continental policy, though cancelled for over five years, might still provide coverage for the Travelers' action. Immediately upon becoming aware of the possible coverage, and within two days after having reviewed the Continental policies, Pullen sent written notification of the Travelers' suit to Continental. Pullen at all times acted in good faith.

Continental has cited several cases in which delays of less than eight or nine months have been held to be unreasonable. However, as noted, each case stands on its own particular facts and circumstances. *Harris*, 261 N.C. at 502, 135 S.E. 2d at 211; Annot., 18 A.L.R. 2d 443, § 16. This case does not involve a simple traffic accident; rather, it involves a complex and protracted matter of professional malpractice. Furthermore, none of the cases cited by Continental concerns an insurance policy which has been cancelled and on which no premiums have been paid for over five years.

In view of these circumstances and the evidence presented, we hold the trial court erred in failing to conclude that Continental was given notice within a reasonable time since the insured reasonably believed it was not covered by the Continental policies. *See generally Great American Insurance Co. v. Tate Construction Co.*, 315 N.C. 714, 340 S.E. 2d 743 (1986) (this is the second reported opinion involving these parties). The ultimate conclusion of the trial court is still correct however—Continental's denial of coverage was wrongful and unjustified.

III.

[3] Continental's policy provides that it is obligated "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured" within the period of policy coverage. Continental argues that the trial court erred in finding that Pullen was "legally obligated" to Travelers for wrongful acts occurring in 1971. Continental also argues that if Pullen was "legally obligated," Lloyd's has failed to show that any amount of the settlement represents payment for wrongful acts occurring in 1971. Continental specifically asserts that any recovery by Travelers for such acts was barred: by the applicable statute of limitations, by a lack of privity between Pullen and Travelers, because Pullen had been released by Travelers, and because Travelers was contributorily negligent. These arguments are without merit.

For the reasons set forth in section VI of this opinion, Continental had a duty to defend Pullen where on the face of the complaint Pullen was being sued for acts which occurred during the period of Continental's coverage. Continental had the opportunity to raise these defenses during the Travelers' litigation, but as we have previously determined, Continental unjustifiably refused to defend Pullen in that action. When an insurer without justification refuses to defend its insured, the insurer is estopped from denying coverage and is obligated to pay the amount of any reasonable settlement made in good faith by the insured of the action brought against him by the injured party. *Nixon v. Insurance Co.*, 255 N.C. 106, 120 S.E. 2d 430 (1961); *Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F. 2d 818 (7th Cir. 1981). By denying liability and refusing to defend claims covered by the insurance policy, the insurance company commits a breach of the policy contract and thereby waives the provisions defining the duties and obligations of the insured. *Nixon*, 255 N.C. at 111, 120 S.E. 2d at 435. The trial court was therefore not required to find that Pullen was "legally obligated" to pay damages to Travelers.

In view of Continental's wrongful breach of the policy contract we find it unnecessary to discuss whether Lloyd's has failed to show that any amount of the settlement represents payment for wrongful acts occurring in 1971.

### IV.

[4]　Continental next contends that the trial court erred in concluding that the settlement in the Travelers' action was reasonable and made in good faith. The court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Williams v. Pilot Life Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975). The evidence showed Travelers brought suit claiming 80 million dollars in losses suffered in reliance upon allegedly false and misleading financial statements issued by Pullen between 1967 and 1973. Continental states in its brief that the losses attributable to 1971 — the last year of Continental coverage — could reasonably total 11.6 million dollars. Lloyd's settled the claim for 5.25 million dollars. There is no evidence in the record of any bad faith on the part of Lloyd's in its efforts to settle the case. All the evidence shows Lloyd's vigorously pursued the defense of Pullen, while Continental denied coverage and refused to defend. In short, there is more than ample evidence in the record to support the findings and conclusions of the trial court, and we find no error.

### V.

[5]　Continental further contends that the trial court erred in failing to prorate Continental's obligation at one-eleventh of the losses which can be attributable to acts or omissions occurring in 1971. We disagree.

We have previously determined that the Lloyd's policy only provided excess coverage for acts and omissions occurring before December 1971, and therefore the Continental policy acts to provide primary coverage for that period. Also, we have pointed out that Continental acknowledges that the losses attributable to 1971 could reasonably total 11.6 million dollars. In view of these facts, we find the trial court properly ordered Continental to pay plaintiffs the full amount of its policy limits.

### VI.

[6]　The trial court awarded Lloyd's $138,030.40 for reimbursement of defense costs. This figure is equal to a 19% share of the settlement figure for which the trial court determined Continental was responsible. Continental contends it owes no obligation to

contribute to Lloyd's defense costs, claiming Lloyd's was obligated as a primary insurer to defend Pullen under its policy. Lloyd's in its cross-appeal contends the trial court erred in failing to reimburse Lloyd's for the full amount of its defense costs, claiming Continental was the primary insurer and thus obligated to defend Pullen.

We hold both parties had a duty to defend Pullen and thus the defense costs should be shared equally. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. *Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E. 2d 313, 318 (1968). Furthermore, "allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 n. 2, 340 S.E. 2d 374, 377 (1986). We have determined Continental was the primary insurer for acts or omissions occurring on or before 30 November 1971. The Travelers' complaint alleged damages as a result of reliance upon financial statements produced by Pullen during the coverage period of the Continental policy. Lloyd's was the primary, and only, insurer for the period following 30 November 1971. The Travelers' complaint also alleged damages arising from the period of the Lloyd's policy coverage. Thus, under North Carolina law, both insurers had a duty to defend Pullen. 315 N.C. at 691, 340 S.E. 2d at 377. In view of this fact, we believe that equity dictates that the defense costs be shared equally among the two insurers.

This cause is remanded to the trial court for modification of the judgment consistent with this opinion.

Affirmed in part, reversed in part and remanded.

Judges WELLS and PARKER concur.