**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1149**

CONTINENTAL CASUALTY COMPANY,

     Plaintiff - Appellee,

  v.

AMERISURE INSURANCE COMPANY,

     Defendant - Appellant.

**No. 17-1208**

CONTINENTAL CASUALTY COMPANY,

     Plaintiff - Appellant,

  v.

AMERISURE INSURANCE COMPANY,

     Defendant - Appellee.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:14-cv-00529-GCM)

Argued:  January 23, 2018       Decided:  March 28, 2018

Before MOTZ, TRAXLER, and KEENAN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Motz and Judge Traxler joined.

---

**ARGUED:** Richard Leonard Pinto, PINTO, COATES, KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Appellant/Cross-Appellee. Karen Ventrell, CNA COVERAGE LITIGATION GROUP, Washington, D.C., for Appellee/Cross-Appellant. **ON BRIEF:** Adam L. White, PINTO, COATES, KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Appellant/Cross-Appellee. David J. Redding, Ty K. McTier, REDDING JONES PLLC, Charlotte, North Carolina, for Appellee/Cross-Appellant.

---

BARBARA MILANO KEENAN, Circuit Judge:

In this insurance coverage dispute, we consider whether claims in an underlying personal injury suit against two contractors were covered under policies issued by Amerisure Insurance Company (Amerisure), in which the contractors were "additional insureds." Contending that the claims were excluded from coverage, Amerisure refused to participate in the contractors' defense, and did not contribute to a final settlement of the lawsuit. Thereafter, Continental Casualty Company (Continental), which had defended the contractors under the terms of a different policy and had paid the settlement amount, filed the present suit against Amerisure asserting that Amerisure had breached its duty to defend. Continental sought a declaratory judgment requiring Amerisure to reimburse Continental for the full settlement amount plus prejudgment interest and for the fees and costs Continental incurred in defending the underlying action.

After the parties filed cross-motions for summary judgment, the district court denied Amerisure's motion and granted Continental's motion in part, concluding that Amerisure was liable to Continental for repayment of the $1.7 million settlement plus prejudgment interest. However, the district court denied Continental's motion to hold Amerisure liable for full payment of Continental's defense costs and fees, determining that Amerisure should be required to pay only half those amounts.

Upon our review, we affirm the district court's judgment that Amerisure improperly relied on a policy exclusion to avoid its duty to defend, and that Amerisure was liable under the terms of its policies to pay the full cost of the settlement plus pre-judgment interest. However, we vacate the court's judgment with respect to defense fees

3

and costs, and hold that Amerisure was liable for the full amount of those fees and costs because Continental did not have an independent duty to defend in the underlying lawsuit. Accordingly, we affirm in part, and vacate in part, the district court's judgment.

I.

KBR Building Group, LLC (BE&K) served as the general contractor on a construction project to build a hospital for the Charlotte Mecklenburg Hospital Authority (the Hospital Authority) in Pineville, North Carolina. BE&K entered into a subcontract with SteelFab to supply and construct the steel infrastructure for the hospital. SteelFab, in turn, entered into a contract (the SteelFab-CSS subcontract) with a "second-tier" subcontractor, Carolina Steel and Stone, Inc. (CSS), to erect the steel structure.

While working on this portion of the project, Dustin Miller, a CSS employee, tripped and fell 30 feet to the ground after his safety cable broke (the accident). Miller suffered serious injuries, including "paralysis from his chest down." At the time of the accident, CSS held both commercial general liability (CGL) and umbrella insurance policies issued by Amerisure (the Amerisure policies). As required by the SteelFab-CSS subcontract, the Amerisure policies included SteelFab and BE&K as "additional insureds."

The Amerisure policies complied with the minimum coverage amounts required by the SteelFab-CSS subcontract, namely, a total of $2,000,000. The Amerisure CGL policy provided a limit of liability of $1,000,000 per occurrence, while the umbrella

4

policy provided an additional $5,000,000 per occurrence.[1]  Additionally, the SteelFab-CSS subcontract stated that "the insurance required of [CSS] must be *primary and noncontributory* with SteelFab's Insurance program."  (emphasis added).

In addition to its "additional insured" status under Amerisure's policies, SteelFab held its own CGL policy issued by Continental, which policy contained an "additional insured" endorsement covering BE&K.  BE&K also was insured under the Hospital Authority's "rolling owner controlled insurance program" (ROCIP).[2]  By enrolling in the ROCIP, BE&K also had coverage under policies issued by a separate insurance provider.  Although the terms of the ROCIP required participation by all tiers of contractors, participation was not automatic, and BE&K did not enroll either SteelFab or CSS in the ROCIP.  Instead, as required by an additional provision of the ROCIP, these unenrolled subcontractors maintained their own insurance coverage as previously described.

After the accident, Miller filed the underlying personal injury action against defendants BE&K and SteelFab, alleging numerous theories of negligence and breach of contract (the Miller action).  Miller alleged, in relevant part, that BE&K and SteelFab failed to provide a safe work environment, failed to ensure that their subcontractors

---

[1] The certificate of liability insurance that CSS issued to SteelFab indicates that CSS obtained umbrella liability coverage with only $1,000,000 per occurrence.  Any discrepancy in the amount of coverage provided by the Amerisure umbrella policy, however, does not affect our analysis in this case.

[2] The ROCIP was defined as an insurance program in which coverage is provided "on a construction project 'wrap-up' basis for contractors . . . of any tier that have been properly enrolled, while performing operations at the construction project sites."

5

followed certain safety measures, failed to properly inspect certain safety features, failed to control and supervise the workplace, and failed to warn subcontractors about the lack of safety measures. Miller did not name CSS as a defendant, but was paid workers' compensation benefits based on his status as a CSS employee.

Continental agreed to defend the Miller action subject to a full reservation of rights. When Continental sought Amerisure's participation in this defense, Amerisure declined on the ground that any defense of Miller's claims was subject to a "controlled insurance program" exclusion (the CIP exclusion) contained in the Amerisure policies. Amerisure contended that this exclusion precluded coverage and excused any duty to defend because the Hospital Authority had a ROCIP in effect on the date of Miller's accident.

Ultimately, BE&K and SteelFab reached a settlement agreement with Miller for $1.7 million. Continental paid the settlement amount and expended more than $660,700 in related attorneys' fees and costs.

Continental filed the present action in the district court seeking a declaratory judgment that Amerisure breached its duty to defend the Miller action, and requiring Amerisure to reimburse Continental for the cost of the settlement plus the costs and fees incurred in defending the Miller action. The parties filed cross-motions for summary judgment.

The district court denied Amerisure's motion. The court granted Continental's motion in large part, concluding that Amerisure had breached its duty to defend the Miller action and that, under the terms of Amerisure's policies, Amerisure was liable to

6

reimburse Continental for the $1.7 million settlement amount. With regard to costs and fees, however, the district court held that "[e]quity dictates that the defense costs be shared equally among the two insurers," and ordered Amerisure to reimburse Continental for half the associated costs and fees. The parties filed timely cross-appeals.

II.

These appeals present three primary issues for our review: (1) whether the CIP exclusion in the Amerisure policies excused Amerisure from defending the Miller action; (2) if Amerisure breached its duty to defend, whether Amerisure was liable to reimburse Continental for the full $1.7 million settlement under the coverage provided in the Amerisure policies; and (3) if Amerisure breached its duty to defend, whether Amerisure was required to reimburse Continental for the full amount of the costs and fees incurred by Continental in defending the Miller action.[3]

Our review of these issues presents questions of law concerning the interpretation of insurance policy language, which questions we consider de novo. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013) (setting forth standard

---

[3] Amerisure also contends on appeal that the district court abused its discretion in excluding the testimony of one of Amerisure's expert witnesses, Walter E. Brock, Jr. The district court ruled that Brock's opinion was "nothing other than his interpretation of the CIP exclusion." Brock also offered opinions on additional matters regarding the relevant policy language. We hold that the court did not abuse its discretion in concluding that Brock's testimony did not aid in resolving any factual issues but improperly addressed issues of law. *See* Fed. R. Evid. 702(a); *Forrest Creek Assocs. v. McLean Savs. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 367 (4th Cir. 1986).

for reviewing district court's award of summary judgment and decision regarding contract interpretation). We apply North Carolina law, because this case arose under the district court's diversity jurisdiction, and the relevant insurance policies were delivered in North Carolina.[4] *See Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000).

Because insurance policies are contracts, we apply familiar rules of construction to discern the intent of the parties. *Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 563 (N.C. 2000). When the policy language is clear and unambiguous, a court is required to enforce the policy as written. *Id.* Terms defined in insurance policies are applied to all clauses of the insurance contract, while undefined terms are construed in accordance with their ordinary meaning. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 612 (N.C. 2010). When "the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved . . . in favor" of coverage. *Gaston Cty.*, 524 S.E.2d at 563 (citation omitted). With these principles in mind, we turn to address the parties' arguments.

## A.

We first consider whether the district court erred in holding that Amerisure breached its duty to defend BE&K and SteelFab in the Miller action. According to Amerisure, the CIP exclusion in its CGL and umbrella policies exempted Amerisure from

---

[4] Both parties and the district court agreed that North Carolina law governs this coverage dispute.

any obligation to defend the action because the ROCIP, a controlled insurance program, had been implemented by the Hospital Authority. We disagree with Amerisure's position.

Under North Carolina law, an insurer's obligation to defend its insured in a lawsuit is established by comparing the terms of the policy with the allegations in the plaintiff's complaint. *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 239 (4th Cir. 1999). In reading these documents "side-by-side," an insurer determines whether the events as alleged are covered or excluded under a particular policy. *Id.* (quoting *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 378 (N.C. 1986)). "Allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable . . . suffice to impose a duty to defend." *Waste Mgmt.*, 340 S.E.2d at 377 n.2. Thus, an insurer must defend its insured against a lawsuit unless no allegation is "even arguably covered by the policy." *Vigilant*, 919 F.2d at 240 (citation omitted). Accordingly, if any of the allegations in the Miller complaint arguably fell within the coverage afforded by Amerisure, it had a duty to defend its insured in the underlying action.

Amerisure does not dispute that BE&K and SteelFab were insureds under the Amerisure policies, or that Miller's injuries qualified as a covered occurrence within the applicable policy periods. Nevertheless, Amerisure contends that it was exempted from any duty to defend by the CIP exclusion in both Amerisure policies.

The Amerisure policies include standard language detailing Amerisure's duty to defend: "We will pay those sums that the insured becomes legally obligated to pay as

9

damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." The CIP exclusion provided:

> This insurance does not apply to "bodily injury" . . . arising out of . . . *[CSS's] ongoing operations* . . . if such operations were at any time *included* within a "controlled insurance program" for a construction project in which you are or were involved.[5] (emphasis added).

Accordingly, under the Amerisure policies, the CIP exclusion applied only if two conditions were satisfied: (1) Miller's injuries "arose out of" CSS's operations,[6] and (2) CSS's operations were "included" in the ROCIP.

With respect to the first condition, we strictly construe the phrase "arising out of" when that phrase appears in a policy exclusion. *See Southeast Airmotive Corp. v. U.S. Fire Ins. Co.*, 337 S.E.2d 167, 169 (N.C. Ct. App. 1985) (explaining that exclusions from liability in policies are not favored). Thus, coverage "will not be denied where there is more than one cause of an injury and only one of the causes is excluded." *Nationwide Mut. Fire Ins. Co. v. Nunn*, 442 S.E.2d 340, 343 (N.C. Ct. App. 1994). Under the plain language of Amerisure's CIP exclusion, only injuries arising from CSS's operations were excluded. Accordingly, any injuries allegedly arising out of the operations of BE&K or SteelFab were not subject to the CIP exclusion.

---

[5] The CIP exclusions refer to "your" operations. "Your" is defined by the Amerisure policies as the "named insured," or CSS only.

[6] "Operations" is not defined in the Amerisure policies.

10

At the time of Miller's accident, he unquestionably was performing work for CSS while "installing metal decking." However, Miller's complaint alleged more than one potential cause of his injuries. Numerous allegations in his complaint rested on the failures of BE&K and SteelFab with respect to their supervisory role over CSS's operations and safety procedures. Miller also alleged that BE&K and SteelFab, independently from CSS, failed to provide adequate safety equipment and procedures, causing Miller's injuries. Regardless of the actual cause of those injuries, at the time Amerisure refused to defend the Miller action, the allegations presented a distinct possibility that Miller's injuries arose from those other contractors' operations.

Because Miller's injuries arguably "arose out of" operations other than those conducted exclusively by CSS, the first condition of the CIP exclusion was not satisfied. Therefore, we need not consider the second condition of the CIP exclusion, and conclude that Amerisure was not entitled under the policy language to rely on the CIP exclusion to avoid its duty to defend in the Miller action. Accordingly, we hold that the district court did not err in concluding that Amerisure breached its duty to defend against the underlying personal injury action.

B.

We next address the question whether the district court erred in holding Amerisure liable for the full amount of the $1.7 million settlement paid by Continental. According to Amerisure, its coverage was capped at $1,000,000 per occurrence as provided in the Amerisure CGL policy. Although Amerisure had issued CSS an umbrella policy providing an additional $5,000,000 in coverage, Amerisure contends that the umbrella

11

coverage was not triggered in this case. Amerisure maintains (1) that CSS did not agree to extend the umbrella coverage to the additional insureds, SteelFab and BE&K, or alternatively, (2) that Continental's CGL policy took priority over Amerisure's umbrella policy based on those policies' "other insurance" provisions. We disagree with Amerisure's position.

The Amerisure umbrella policy coverage provision stated:

> We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking damages for such 'bodily injury' . . . when the 'underlying insurance' does not provide coverage *or the limits of the 'underlying insurance' have been exhausted.* (emphasis added).

The policy provided that any "additional insured" under the CGL policy, namely, SteelFab and BE&K, "automatically" were insureds under the umbrella policy. The umbrella policy defined "retained limit" as the amount of "underlying insurance" coverage appearing in the Declarations. "Underlying insurance" was defined as any policy "listed in the Declarations under the [s]chedule of 'underlying insurance.'" The only CGL policy listed in the umbrella policy's Declarations of underlying insurance was the Amerisure CGL policy, with a $1,000,000 limit. And, notably, the Continental CGL policy was not listed in the Declarations.

Accordingly, under the plain language of the Amerisure umbrella policy, coverage was triggered when the Amerisure CGL policy limit had been exhausted. Because the settlement amount of the Miller action exceeded the $1,000,000 limit in the Amerisure CGL policy, the umbrella coverage necessarily was triggered.

12

Amerisure contends, nevertheless, that its coverage of SteelFab and BE&K as additional insureds was limited to the $1,000,000 CGL policy. Amerisure relies on language in the umbrella policy stating that "the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by the underlying insurance." However, the relevant contract, the SteelFab-CSS subcontract, plainly required CSS to obtain $1,000,000 in CGL coverage and an additional $1,000,000 in umbrella coverage. The subcontract also stated that SteelFab and BE&K "shall be named as additional insureds on" CSS's CGL policy.[7] Moreover, SteelFab's specifications regarding CSS's insurance obligations plainly required that CSS obtain $2,000,000 in "minimum" CGL and umbrella coverage "with additional insured endorsement." Thus, we conclude that the SteelFab-CSS subcontract required $2,000,000 in total coverage, including coverage provided to the additional insureds under both a CGL and an umbrella policy, and that the Amerisure policies complied with these requirements.

Our conclusion that the Amerisure umbrella policy coverage was triggered is unaffected by the "other insurance" provisions in the Continental CGL policy and the Amerisure umbrella policy. The Continental CGL policy stated:

---

[7] We find no merit in Amerisure's argument that its umbrella coverage did not extend to SteelFab and BE&K because one of the subcontract's provisions is silent regarding additional insureds with respect to umbrella coverage. We read the subcontract as a whole, and its provisions specifically required that the umbrella coverage obtained by CSS include an "additional insured" endorsement covering SteelFab and BE&K.

If other valid [] insurance is available to [SteelFab and BE&K] for a loss we cover . . . our obligations are limited as follows: [] Primary Insurance – This insurance is primary except when . . . [t]his insurance is excess over: [a]ny other *primary* insurance available to you." (emphasis added).

Under this language, depending on the effect of other relevant coverage, the Continental CGL policy was either a "primary" policy or an "excess" policy to another primary policy.

The Amerisure umbrella policy's "other insurance" provision stated that the policy was "excess over . . . any other insurance whether primary [or] excess." However, Amerisure did not issue its umbrella policy contingent on the existence of the Continental CGL policy. Instead, the umbrella policy coverage was triggered when the limit of the "underlying insurance" was exhausted. And, only the Amerisure CGL policy was listed as "underlying insurance" in the policy Declarations. *See Gaston Cty*, 524 S.E.2d at 308-09 (construing similar policy language to mean that an excess policy attached immediately above identified underlying policies regardless of other insurance provision).

Moreover, any ambiguity arising from consideration of the "other insurance" provisions is resolved by the terms of the SteelFab-CSS subcontract that required Amerisure's policies to be "primary and non-contributory" to *all* other insurance provided to SteelFab, including the Continental CGL policy.[8] We therefore conclude that

---

[8] Although Amerisure objects to any reliance on the terms of the SteelFab-CSS subcontract to interpret the meaning of Amerisure's negotiated insurance policy with CSS, the policies issued by Amerisure plainly refer to and incorporate the terms of the (Continued)

14

the Amerisure umbrella policy coverage was triggered immediately upon the exhaustion of the Amerisure CGL policy, and that the Continental CGL policy did not take priority over that umbrella policy. Accordingly, the district court did not err in holding Amerisure liable for the full $1.7 million settlement amount.

C.

Finally, we address whether the district court erred in concluding that Amerisure and Continental should bear equally the fees and costs associated with defending the Miller action. Amerisure submits that Continental had an independent duty to defend the Miller action and, thus, was fully responsible for paying those fees and costs. In its cross-appeal, Continental argues that Amerisure solely was liable for payment of these amounts, because Amerisure's CGL policy provided coverage that was "primary without contribution," and Continental did not have a separate duty to defend. We agree with Continental's position.

As explained above, Amerisure had a duty to defend the Miller action under the Amerisure CGL policy, which provided that coverage afforded to an additional insured shall be "primary and without contribution" from the additional insured's own insurance. In consistent fashion, Continental's CGL policy established that Amerisure's CGL policy was "primary" to Continental's "excess" CGL policy. Under Continental's CGL policy, "[w]hen this insurance is excess, we will have *no duty . . . to defend* the insured against

SteelFab-CSS contract in several respects. Thus, we find no merit in Amerisure's objection.

15

any 'suit' if any other insurer has a duty to defend the insured against that 'suit.' If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (emphasis added). Accordingly, the relevant policies provided that Amerisure had a duty to defend without contribution, and that Continental did not have a duty to defend.

In concluding that the parties should share equally in the defense costs and fees, the district court erroneously relied on decisions that are distinguishable from the present case in one critical respect. *See Ames v. Continental Cas. Co.*, 340 S.E.2d 479, 486 (N.C. Ct. App. 1986); *Vigilant*, 919 F.2d at 240-41. In *Ames* and *Vigilant*, the insurers who bore equal shares of liability each had independent duties to defend based on the nature of their primary coverage, which was applicable to acts occurring during different periods of time. *Ames*, 340 S.E.2d at 486; *Vigilant*, 919 F.2d at 240-41. In the present case, however, one occurrence triggered coverage under concurrent, not consecutive, insurance policies, which clearly allocated the insurers' respective duties to defend. Therefore, we conclude that the district court erred in assigning equal responsibility to Amerisure and Continental for payment of the defense fees and costs incurred in defending the Miller action, and that Amerisure is liable for the full amount of those defense fees and costs.

## III.

For these reasons, we affirm the portion of the district court's judgment holding that Amerisure breached its duty to defend, and was liable under the terms of its policies

for the full cost of the $1.7 million settlement plus prejudgment interest.[9]  We vacate the portion of the district court's judgment holding Amerisure and Continental liable in equal shares for the cost and fees incurred in defending the Miller action.  We remand the case to the district court for entry of an award in Continental's favor for the full amount of its fees and costs incurred in defending the Miller action.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[9] Although Amerisure seeks reversal of the district court's award of prejudgment interest, Amerisure fails to provide any argument or citation for this assertion.  Thus, Amerisure has waived any challenge to the award of prejudgment interest.  *See* Fed. R. App. P. 28(a)(9)(A) ("[T]he [appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").