W. I. ANDERSON & COMPANY v. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY OF BOSTON.

(Filed 16 December, 1936.)

1. **Insurance § 43—Question of identity of truck as the truck insured held for jury under evidence in this case.**

   Plaintiff insured testified that the truck which was covered by the policy of liability and property damage insurance had been repaired by having a second-hand motor installed in place of the original motor in the truck, and a part of the cab replaced with second-hand parts, but that the truck involved in the accident was the same truck which was insured, although the serial numbers on the engine and cab, as set out in the policy, were not the same. *Held:* The serial numbers on the engine and cab as set out in the policy were solely for the purpose of identification, and the question of the identity of the truck as the truck insured was a question for the jury under plaintiff's evidence.

2. **Insurance § 45—Notice that truck insured was involved in collision held sufficient.**

   The truck covered by a policy of liability and property damage insurance was repaired by having the motor and parts of the cab replaced by second-hand motor and cab parts, so that the serial numbers of the motor and cab were not the same as those set out in the policy. The truck was involved in a collision and notice thereof was sent insurer in less than 17 days, and notice of suit by the injured third party was given insurer immediately and before the time for answering expired. Insurer denied liability on the ground that the truck involved in the collision was not covered by the policy. *Held:* Although denial of liability was a waiver of notice, notice was given within a reasonable time, and the notice that a truck insured under the policy was involved in a collision was sufficient under the terms of the policy.

APPEAL by plaintiff from *Hill, Special Judge,* at March Term, 1936, of GUILFORD. Reversed.

This action is brought by plaintiff against defendant to recover the sum of $2,323.20 paid by plaintiff for bodily injury damage, on account

of an accident that is alleged to be covered by the liability insurance policy issued by defendant to plaintiff.

The defendant, on 5 October, 1932, made, executed, and delivered to plaintiff its automobile liability policy No. AL-148419, in which defendant contracted and agreed, among other things, to pay, within the policy limits applying thereto, each loss by reason of liability imposed upon the plaintiff by law for damages, not only on account of bodily injury or death of a person or persons not therein excepted, but also on account of damages to the property of others, and the resulting loss of use thereof caused by any accident accruing within the policy period by reason of the use, ownership, maintenance, or operation of the motor vehicle or trailer mentioned or referred to in said policy.

The policy became effective at 12:01 a.m., 5 October, 1932, and expired 5 October, 1933. Advance premium of $770.25 was paid by plaintiff to defendant for the protection under the policy. The premium for public liability was $508.95, property damages $261.30. The policy covered 23 automobiles. One of them was "G.M.C. 2-T truck 1927 serial No. 50574, Motor No. 1991549." Premium, $27.50. It was in evidence that by reason of engine trouble it was necessary to use another engine in connection with the above described truck. Some time in November, 1932, plaintiff purchased from Charlotte a motor and chassis of a 2-ton G.M.C. truck, Motor No. 1954668, Serial No. T-50379, which was placed in the truck which bore Motor No. 1991549, Serial No. 50574. G.M.C. 2-T truck, 1927, was used in plaintiff's business before and after repairing the truck by placing the motor and chassis—substituting the new engine for the old.

A. G. Ellington testified for plaintiff: "I was at the scene of the accident probably 30 minutes or a little more thereafter, and we had no other car in that community on that evening. I saw no other car at the same place at the scene of the collision—no more than passenger cars. The one that collided with this same truck was there; it belonged to Mr. B. E. Brown, and I noticed the damage to the cars and the truck in the highway and the road, and I could tell that the cars had collided. The truck involved in the collision was the one that belonged to us. The body of this car that was involved in the collision was the body of the car referred to in the policy as Engine No. 1991549. The wheels were the same as the one included in the policy. I am not certain about the top. There had been repairs made to the automobile referred to in the policy as the G.M.C. 2-ton truck bearing Engine No. 1991549. We had some engine trouble and I instructed the mechanic to go to Charlotte and buy parts to overhaul the engine, included in the truck; but, instead, when he got there he bought a second-hand engine of the same type, which he installed. There was no difference in the truck before and

after, other than the changes which I have mentioned. That is, the engine and a part of the cab was changed. The portion of the cab that was changed evidently had the serial number on it. . . . I signed the Report of Automobile Accident. It was sent to the company prior to 20 June, 1933. It was made up by the young lady in the office, under my supervision, and I signed it. It is dated 5 June. When I first made out the report the engine number given as the automobile involved in the accident was 1991549."

The accident which the controversy is over took place on 3 June, 1933, about 2:00 o'clock p.m. The report was made up on 5 June and signed and sent to the defendant prior to 20 June, 1933. Actions were brought against plaintiff on 14 September, 1935, by parties injured in the collision. Immediately, and before the time for answering, notice was given defendant. The defendant refused to defend. Later the actions were compromised by plaintiff and this action is brought to recover under the policy the amount paid the injured parties.

At the close of plaintiff's evidence, the court below sustained a motion for judgment as in case of nonsuit made by defendant, C. S., 567. The plaintiff excepted, assigned error, and appealed to the Supreme Court.

*Frazier & Frazier for plaintiff.*
*Sapp & Sapp for defendant.*

CLARKSON, J. We cannot sustain the nonsuit as we construe the record. If the car in the collision was G.M.C. 2-T truck 1927, Serial No. 50574, Motor No. 1991549, on which plaintiff had liability insurance in defendant company, the matter of identification was for the jury to determine. When the new engine was installed in the truck, the Motor No. 1954668 and Serial No. T-50379 did not change it, as it was the same truck with repairs. Repairing the truck by placing a motor and chassis in it did not make a new car. The number of an automobile is inserted generally for the purpose of identification. The matter of identification of the truck in the collision was for the jury.

In *Motor Co. v. Motor Co.,* 197 N. C., 371, there was installed in the car in controversy, to repair same, a new engine or motor. At p. 374 we find: "In *Gregory v. Stryker,* 2 Denio (N. Y.), at p. 630, speaking to the subject, it is said: 'But it is equally clear, as a general proposition, that where the owner of a damaged or worn-out article delivers it to another person to be repaired and renovated by the labor and materials of the latter, the property in the article, as thus repaired and improved, is all along in the original owner, for whom the repairs were made, and not in the person making them.' *Comins v. Newton,* 10 Allen (Mass.), 518; *Southworth v. Isham,* 5 N. Y. Supp., 448."

A case analogous is *Reimers v. International Indemnity Co.* (Wash.), 254 Pac. Rep., 852 (853-4): "Perhaps, if needed, another argument might be advanced as being not wholly illogical. Respondent might have repaired his truck, piece by piece and part by part, until the old chassis was wholly superseded by a new. If, instead of doing it piecemeal, it was done all at once, was it any less a repair? The discarded parts were certainly not a truck, and the original truck either then ceased to exist or continued as the repaired truck."

In the automobile liability policy is the following: "To serve the insured by such investigation of each alleged accident and such negotiation or settlement of each claim as the company may deem expedient. To defend, in behalf of the insured, each suit, even though wholly groundless, brought against the insured to enforce a claim for such injury, death, or damage, and, as respects each suit, to pay the entire premiums on attachment, removal, and appeal bonds, costs taxed against the insured, and interest accruing on the entire judgment up to the date of payment by the company of its share of the judgment." Notice of the claims made by parties injured was given by plaintiff to defendant under the terms of the policy, we think, in a reasonable time.

In *Lowe v. Fidelity & Casualty Co.,* 170 N. C., 445, at p. 446, we find (plaintiff's appeal): "An insurance company cannot deny all liability under a contract of insurance and then be heard to say, after it has repudiated the contract, that assured should have given it notice when the action was instituted, so that it could have defended the action in accordance with the terms of the contract. Having denied any liability under the policy, it was neither necessary nor proper to notify defendant again," quoting authorities. At p. 447 (defendant's appeal): "The defendant appeals because the judge rendered judgment in favor of the plaintiff, receiver, for costs, expenses, and attorney's fees incurred by plaintiff in defending the Marcus suit. The plaintiff's costs, expenses, and attorney's fees incurred by him in defending the suit amount to $352.95, of which he has paid $140.00. The contract makes it the duty of defendant, at its expense, 'to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, through the assured's negligence, by the persons described in subsections (a) and (b) of the preceding paragraph, at the places and under the circumstances therein described, and as the result of an accident occurring while this policy is in force.' The failure of the defendant to defend the suit, after repudiating its liability to the assured, constituted a distinct breach of contract and justified the plaintiff in defending it at his own expense. *Beef Co. v. Casualty Co.,* 201 U. S., 173. These costs

and expenses constitute a primary liability of defendant that plaintiff may recover as damages for the breach of the contract. *Power Co. v. Casualty Co.,* 153 N. C., 279." *Insurance Co. v. Harrison-Wright Co.,* 207 N. C., 661.

The defendant denied liability in the *Lowe case, supra,* and it was said that notice was not necessary, but, going further, we think, under the facts and circumstances of this case and the terms of the policy, the notice was sufficient. *Mewborn v. Assurance Corp.,* 198 N. C., 156.

It goes without saying that the compromise amount sued for by plaintiff, which was paid by plaintiff to those injured, must be reasonable and made in good faith. Defendant contends in its brief that plaintiff knew that the truck involved in the collision was not insured at the time of the collision, 3 June, 1933, and "is established by the evidence." We cannot so hold. We think this is a matter for the jury on the facts appearing in the record.

For the reasons given, the judgment in the court below is
Reversed.