MARY KATHERINE FLEMING, BY HER NEXT FRIEND, JOHN C. FLEMING, v. NATIONWIDE MUTUAL INSURANCE COMPANY, A CORPORATION.

(Filed 26 February 1964.)

**1. Insurance § 45—**

Where plaintiff's evidence tends to show that insurer was not given notice of the accident constituting the basis of the claim until some thirteen months after the occurrence of the injury, and plaintiff fails to introduce evidence

explaining or justifying such delay, the evidence justifies nonsuit for violation of the policy provisions requiring notice, unless insurer had waived this provision.

**2. Same—**

Ordinarily a refusal by insurer to defend suit against insured on the ground that the policy did not cover the claim is a waiver by insurer of the requirement of the policy for notice of claim.

**3. Same—**

Where the policy provides coverage for accidents not connected with the transaction of business, and notice to insurer of claim against insured recites facts constituting a business connected accident, the denial of coverage by insurer does not waive its right to assert the defense that notice of the accident was not given as soon as practical as required by the policy, the misstatement of facts having lulled insurer into repose until after a consent judgment had been entered against insured.

APPEAL by plaintiff from *Patton, J.,* April 1963 Special Session of HAYWOOD.

Action by plaintiff to recover the proceeds of a "Comprehensive Family Liability" insurance policy issued by defendant to one Ned Carver.

On 18 June 1957 the plaintiff, an 8-year old child, entered upon the premises of a service station located on the south side of U. S. Highway 70 about three miles west of Waynesville, North Carolina. While on the premises she was attracted to a cage which contained a bear. As she neared the cage the bear either bit or grabbed her leg, inflicting serious injury.

The bear was owned by Ned Carver. The lot and service station belonged to Mrs. Ned Carver and were under lease to one Thurman Caldwell who operated the service station.

On 29 July 1958, more than thirteen months after the injury, plaintiff herein commenced an action in the United States District Court for the Western District of North Carolina against Mr. and Mrs. Carver and Thurman Caldwell for damages suffered because of the injury. The Carvers and Caldwell were represented therein by Attorney Roy Francis. In August 1958 Mr. Francis notified the insurance company (defendant herein) of the pending action and called upon it to defend the action. Upon information received, the insurance company denied that the policy covered such injury and declined to defend the action. Thereafter, on 17 September 1959, a consent judgment was entered against Ned Carver, the named insured, awarding $10,000 damages to plaintiff.

Defendant insurance company was given notice of the judgment by letter dated 12 December 1960. Execution against Ned Carver was returned *nulla bona.* The present action was commenced 7 December 1961.

This action came on for trial at the April 1963 Special Session of Haywood County Superior Court. At the close of all the evidence the court granted defendant's motion for nonsuit.

Plaintiff appeals.

*Van Winkle, Walton, Buck & Wall and Herbert L. Hyde for plaintiff.*
*Williams, Williams & Morris for defendant.*

MOORE, J. The principal question on this appeal is whether the court erred in granting defendant's motion for nonsuit.

The insurance policy contains the following "Conditions":

"3. In the event of an accident, occurrence or loss, written notice containing particulars . . . shall be given by or for the insured to the Company or any of its authorized agents *as soon as is practicable*. . . ." (Emphasis added).

"6. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy. . . ."

The complaint alleges that defendant was given full and timely notice of the injury and the action in the United States District Court, and insured fully complied with all the terms and conditions of the policy. Defendant, answering, denies these allegations but admits that defendant was given notice of the injury in terms showing that the policy did not cover the occurrence. Further answering, defendant specifically pleads the provisions of the policy (set out above) with respect to notice and the necessity of complying with the terms of the policy. In reply, plaintiff alleges that defendant waived the notice requirement by refusing to defend the prior action on the ground that there was no coverage.

There is no evidence in the record of any notice of any kind to defendant or any of its agents of the injury to plaintiff until August 1958, thirteen months after the occurrence of the injury. The evidence fails to explain or justify the delay. The failure to give notice for such lengthy period of time defeats the present action as a matter of law (*Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474) unless defendant has waived the notice "condition" of the policy.

The *Muncie* case involves an action against an insurer by a third party beneficiary (plaintiff), who was injured while riding as a passenger in insured's automobile. No notice was given insurer until eight months after the injury; there was no explanation justifying the delay in giving notice. Insurer denied liability and declined to defend the action by plaintiff against insured. The notice provisions of the policy were in all

material respects the same as those in the Carver policy in the instant case. Plaintiff recovered judgment against insured and, failing to collect by execution, sued insurer. This Court held that plaintiff was not entitled to recover against insurer. The opinion, delivered by *Rodman, J.*, fully discusses the questions of law involved, and no good purpose would be served by repeating the discussion here. We merely paraphrase the opinion. No part of the insurance contract may be ignored. The giving of notice is a condition precedent to insurer's liability. The burden of proof is upon plaintiff to show that notice was given as soon as practicable. Plaintiff, third party beneficiary, has no greater right against insurer than the insured would have. "Notice without explanation for the delay, given eight months after the happening of the accident, resulting in injuries . . . , cannot be said to be given 'as soon as practicable.' Since plaintiff has failed to establish compliance with the condition or to justify the delay, it follows that she has failed to establish her right to maintain the action."

In the case at bar, plaintiff contends that defendant waived the notice requirement of the policy by denying liability and declining to defend the action in the United States District Court solely on the ground that the policy does not cover the injury. It is true that defendant, by letter of 2 September 1958, advised Carver's attorney, Mr. Francis, "In view of our position that we did not have any coverage in policy to protect Mr. Carver, we must respectfully decline to enter into the case by furnishing Mr. Carver a defense."

It is well settled in this jurisdiction and elsewhere that an insurer, as a general rule, is precluded from defending successfully against an action brought under a liability policy on the ground of a violation by the insured of the provisions as to notice where it had denied liability on some other ground. *Anderson v. Insurance Co.*, 211 N.C. 23, 188 S.E. 642; *Lowe v. Fidelity & Casualty Co.*, 170 N.C. 445, 87 S.E. 250; 18 A.L.R. 2d, Anno.: Liability Insurance—Notice—Papers, § 31, pp. 491-494.

In our opinion the present case does not come within the general rule above stated, and defendant did not waive the violation by the insured of the provision as to notice.

The first notice received by defendant was the letter by Carver's attorney, dated 19 August 1958, which states, *inter alia*, "Mr. Carver was the owner of a large pet bear well confined in a heavily wired cage which was kept on the premises at his place of business." The unverified answer of the Carvers and Caldwell in the Federal Court case stated: ". . . (D)efendants, Alva Jo Carver and her husband, Ned Carver, . . . for a rental of ninety dollars ($90.00) per month . . . leased to Thurman Caldwell . . . the (service station) premises . . . together with the fix-

tures . . . and contemporaneously with the execution of said lease it was agreed by and between the defendant, Mr. Carver, and the said Thurman Caldwell that the bear would be left and would remain in the custody and control of the said Thurman Caldwell. . . ."

It was upon the foregoing information, emanating from the persons insured, that defendant denied coverage and declined to defend. By the terms of the policy there is coverage of injury by an animal owned by an insured; and the coverage insures any person legally responsible for such animal. But the policy does not apply to injury by an animal involved in a business pursuit "of an Insured in connection with a business solely owned by that Insured or owned by a partnership of which that Insured is a partner," and does not apply to any act or omission, in connection with business premises, involving the ownership, maintenance or control of an animal.

From the information furnished it by and on behalf of the named insured and other insured persons, insurer was clearly within its rights to deny coverage in its letter of 2 September 1958. Defendant, however, took the extra precaution of obtaining a statement in writing directly from Ned Carver on 18 September 1958, which is in pertinent part as follows: "My wife . . . is the owner of a service station which bears the name of Carvers Sinclair Service Station. She also owns the property on which the building is built. I own the fixtures . . . I have not run the business itself in about two years, having leased it to Thurman Caldwell. . . . Tommy Caldwell (agent of Thurman Caldwell) . . . was operating the station on 6-19-57 when a bear that was caged there grabbed a little girl's leg and tore it rather badly. The bear is owned by me and the cage the bear stays in is owned by me. . . . I originally got the bear for my own satisfaction and also for a tourist attraction and it was kept on the service station premises. The Caldwells said, when the building was leased, that they would feed and take care of the bear if I would leave it there. There was no charge made by me and no payment made by Caldwell in-so-far as the bears staying there was concerned."

Construing the statements in the letter of Attorney Francis, in the answer, and in the written account of Ned Carver, singly or together, the purport is inescapable that the ownership and maintenance of the bear was a business pursuit designed to attract tourists and customers to the service station, and that the bear was kept in connection with business premises. Defendant had the right to rely on the statements of the insured persons. These statements were, in effect, an invitation to deny liability on the ground that the policy did not furnish coverage.

So far as the record discloses, there was no notice or intimation to insurer that the facts were different from those contained in the above

statements until plaintiff offered evidence at the trial in Superior Court in April 1963. Thurman Caldwell then testified: "There was a cage located east of the gas station and there was a bear in that cage. Ned Carver fed the bear. Ned Carver bought the bear. I did not own and I did not have any interest in the bear. . . . I had my dealings with Mrs. Carver. Mr. Carver did not tell me he owned the fixtures . . . I did not employ Mr. Roy Francis to represent me. . . . (T)hat answer (in Federal Court) is not a correct statement of my arrangement with . . . Mrs. Carver." Attorney Francis testified that he never talked with Caldwell, and stated: "At the time I wrote the letter of August 19, 1958, . . . I was not then aware of the lease arrangement out at that place."

It comes to this: Defendant was furnished statements by and on behalf of the persons insured, clearly showing no insurance coverage. Relying thereon and induced to inactivity thereby, defendant denied liability on that ground and declined to defend the action in the United States District Court. Having obtained a judgment against the named insured, fixing him with liability, plaintiff undertakes in Superior Court to adduce evidence showing the facts to be different from those stated to defendant at the outset so as to bring her injury within the policy coverage. This, Ned Carver could not do were he the plaintiff herein. But plaintiff has no greater rights against defendant than Ned Carver would have. Defendant, relying on statements it had the right to accept as true and to act upon, and having been lulled into repose until the time and opportunity have passed for defending against liability on the merits, will not be adjudged to have waived other available defenses now that plaintiff, standing in the shoes of the named insured, seeks to change positions to the detriment of the insurer and at the same time keep insurer frozen in the position it had taken because of the original statements. Under these circumstances, we hold that defendant has not waived the violation of the notice provision.

*State Mutual, Etc., Ins. Co. v. Watkins,* 180 S. 78 (Miss. 1938) is apposite. In that case the insurance policy did not cover injury to an employee of insured. Insured sent plaintiff in the former's automobile to a neighboring town on a business mission for insured. There was an accident and plaintiff and a passenger were injured. Insurer settled with the passenger, and in the course of insured's investigation preliminary to such settlement, plaintiff made a statement to insurer's agent that he was an employee of insured at the time of the accident. Plaintiff's attorney later inquired of insurer what it was going to do about plaintiff's injury, and insurer advised that there was no coverage. Plaintiff sued insured, alleging that he was an employee of insured at the time of the accident. Five months elapsed before insurer had notice of the suit. Insurer, noting the

allegation that plaintiff was an employee of insured, denied coverage and declined to defend. At the trial plaintiff was permitted to amend his pleading, allowing him to allege that he was not an employee but was acting gratuitously. Plaintiff recovered judgment for $2000 against insured and, execution having been returned *nulla bona*, sued the insurer. Insurer defended on the ground that no timely notice of the suit was given. Plaintiff pleaded that this defense was waived by reason of insurer's denial of liability on the ground of want of coverage. The Court held that there was no waiver of the notice provision and said:

> "In view of the facts stated, the contention of appellee that the insurance company had waived notice is obviously not tenable. It would seem hardly necessary to say that a party who presents a certain state of material facts to another may not rely upon a waiver by the latter as having any effect in regard to a materially different set of facts later asserted by the party claiming the waiver.
>
> "If the alleged beneficiary, in a situation such as here presented, were allowed to prevail against the insurer, the lawful stipulations in insurance policies for notice and statement of loss or injury could be diverted from their proper purpose and turned into decoys to lead the insurer away from investigation and defense; would permit an alleged beneficiary who had procured the absence of the insurer in reliance upon the represented state of facts to move later and suddenly against it, without warning, upon another and a materially different set of facts, — essentially different so far as any liability of the insurer is concerned. This does not comport with the principles of judicial justice, and is not permissible."

It will be observed, parenthetically, that a change of position by insured will not *per se* violate the cooperation clause of the insurance policy or render ineffective a waiver of policy conditions, otherwise binding, if insurer is not prejudiced by such change of position. *Henderson v. Insurance Co.*, 254 N.C. 329, 118 S.E. 2d 885. In the instant action, the prejudice to defendant is so clear as not to be debatable.

Affirmed.