724 F.Supp. 1173 (1989)
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Individually and as subrogee of James E. Collins, M.D., Plaintiff,
v.
VIGILANT INSURANCE COMPANY, Defendant.
No. C-87-395-G.
United States District Court, M.D. North Carolina, Greensboro Division.
August 18, 1989.
On Motion For Prejudgment Interest November 9, 1989.
*1174 J. Reed Johnston, Jr., Joseph Elrod, II, and Frederick K. Sharpless of Tuggle, Duggins, Meschan & Elrod, P.A., Greensboro, N.C., for plaintiff.
Vance Barron, Jr. and William F. Patterson, Jr. of Smith, Helms, Mullis & Moore, Greensboro, N.C., for defendant.

MEMORANDUM OPINION AND ORDER
HIRAM H. WARD, Senior District Judge.
This matter is before the Court for reconsideration of plaintiff's motion for summary judgment. See Order and Notice, C-87-395-G, June 27, 1989. Defendant and plaintiff provided consecutive policies of professional liability insurance to a psychiatrist. Plaintiff brought this action seeking damages arising from defendant's failure to contribute to defense and settlement costs in two medical malpractice suits *1175 filed against the insured psychiatrist. Plaintiff filed a motion for summary judgment on July 15, 1988. The Court denied plaintiff's motion, and set the matter for trial. See Memorandum Opinion and Order, C-87-395-G, December 22, 1988. However, in the course of preparing the issues for submission to a jury and in light of the pleadings filed in anticipation of trial, after further hearing and argument the Court has determined that summary judgment is the proper means of resolving this matter. Accordingly, the Court will grant summary judgment in favor of plaintiff.

FACTS
The parties to this action, plaintiff St. Paul Fire and Marine Insurance Company and defendant Vigilant Insurance Company, each issued policies of professional liability insurance to Dr. James E. Collins, a psychiatrist. Defendant's policy, an "occurrence" policy, covered Collins for injury sustained by any person arising out of Collins' rendering of or failure to render professional services. The company provided coverage from June 30, 1973 to May 1, 1976. Plaintiff's policy, a "claims made" policy covered Collins for claims made against Collins during the policy period arising out of the performance of professional services rendered or which should have been rendered from May 1, 1976 to March 1, 1980.
In 1984, two individuals, Bonnie Gwyn and H.N. Gwyn, filed separate lawsuits against Collins in state court. The lawsuits arose out of incidents which allegedly occurred at some point while Bonnie Gwyn was a patient of Dr. Collins from mid January 1976 to mid January 1977. The physician-patient relationship began during defendant's policy period, and ended during plaintiff's policy period.
Bonnie Gwyn's complaint alleged that Collins committed medical malpractice. Particularly, it alleged that during 1976 Collins established a physician-patient relationship with her and that as a result of Collins' encouraging her to confide in him, she became mentally and emotionally dependent upon him as her psychiatrist. It further alleged that Collins abused the physician-patient relationship by inducing her to engage in sexual conduct with him, and additionally that he failed to provide adequate psychiatric care. The complaint stated that she suffered extreme mental and emotional harm as a result of the alleged actions of Collins.
Henry Gwyn alleged in his complaint that the conduct of Collins, occurring sometime during the physician-patient relationship, alienated and destroyed the love and affection which existed between Henry Gwyn and his wife Bonnie Gwyn. He further alleged that Collins' actions caused severe mental and emotional suffering to both Henry and Bonnie Gwyn, which culminated in the dissolution of their marriage.
In August, 1984, Collins became aware of the suits filed against him by Bonnie and Henry Gwyn and promptly notified plaintiff. Both suits were voluntarily dismissed, and Bonnie Gwyn's was refiled in October, 1985. Subsequently, during discovery in Bonnie Gwyn's lawsuit, the parties determined that defendant had provided liability coverage for Collins prior to May 1, 1976. By letter received June 9, 1986, defendant learned that an action had been filed against Collins. At that time, only Bonnie Gwyn had refiled her lawsuit. Defendant reviewed copies of her complaint and other evidence submitted by plaintiff and decided that none of the alleged acts occurred within its policy period. Based on this assessment, defendant determined that it had no duty to defend him.
On March 2, 1987 an attorney for Collins informed defendant that the trial of Bonnie Gwyn's action had been set for March 23, 1987, and reiterated that defendant might have some exposure under its policy regarding her claims. Defendant inquired on March 10, 1987 whether any additional information had been discovered indicating that improper conduct occurred before the expiration of defendant's policy. Collins' attorney replied that the physician-patient relationship existed during defendant's policy period and that the evidence indicated that the first physical contact occurred in *1176 May, but that he was unable to say what Bonnie Gwyn might state at trial.
On March 19, 1987, defendant retained counsel to assist in the defense of Collins, while reserving for itself the right to contest any liability imposed on it under its coverage of Collins. On March 25, 1987, during the trial of the suit between Bonnie Gwyn and Collins, the parties agreed to settle. According to the terms of the settlement agreement, plaintiff paid $425,000 to Bonnie Gwyn under its liability coverage.
Shortly thereafter, H.N. Gwyn refiled his lawsuit against Collins. On April 29, 1987 defendant received notice of H.N. Gwyn's pending claims against Collins. The parties negotiated concerning what defense obligations defendant owed to Collins in that action. No agreement was reached. On May 4, 1989, H.N. Gwyn's lawsuit against Collins was settled for a certain sum of money paid by plaintiff to H.N. Gwyn.

DISCUSSION
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact; further, the material submitted must be viewed in the light most favorable to the opposing party. Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970). However, once the moving party has met his burden, the opposing party must come forward with evidence to support its contentions. DeLeon v. St. Joseph's Hospital, Inc., 871 F.2d 1229 (4th Cir.1989). Furthermore, a party who fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, may have summary judgment rendered against it. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).
The parties have submitted various issues in anticipation of trial. However, the issues relevant to resolution of this matter involve defendant's duty to defend, its duty to indemnify and the timeliness of notice to defendant of the underlying claims. For reasons set out in the ensuing discussion, the Court finds the question of whether defendant breached a duty to defend to be the pivotal issue, and, in discussing the propriety of summary judgment in this matter, the Court will address the duty to defend question first.
The duty of an insurer to defend its insured is based on the coverage contracted for in the insurance policy. Mastrom, Inc. v. Continental Cas. Co., 78 N.C.App. 483, 337 S.E.2d 162 (1985). An insurer agrees to defend its insured against facts and circumstances covered by the policy even if the allegations are "groundless, false, or fraudulent;" therefore, the insurer's obligation depends on the nature of the allegations in the complaint and on the insurer's potential liability and not on the merits of the claim or proof of insured's liability. 7C J. Appleman Insurance Law and Practice § 4683.01 (1979 & Supp. 1984). Accordingly, in North Carolina, an insurer properly determines whether it has a duty to defend by applying what is generally known as the "comparison test." Under that analysis, only two documents are pertinent: the insurance policy and the complaint. The allegations of the complaint are considered side by side with the terms of the policy to determine whether the events as alleged are covered or excluded. If the allegations fall within coverage of the policy, then a duty to defend arises, regardless of whether the allegations are ultimately determined to be truthful or untruthful. Stout v. Grain Dealers Mut. Ins. Co., 307 F.2d 521 (4th Cir.1962). Any doubt as to coverage is to be resolved in favor of the insured. Mastrom, Inc., 337 S.E.2d at 163.
*1177 The duty to defend and the duty to indemnify are separate obligations imposed on the insurer. Generally, an insurer's duty to defend is broader than its obligation to pay damages incurred by events covered by a particular policy. While the duty to defend is ordinarily measured by the facts as alleged in the pleadings, the duty to pay is measured by the facts ultimately determined at trial. Strickland v. Hughes, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968). As recently stated by the North Carolina Supreme Court,
When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Consequently, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.
Waste Management v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374, 377, reh. denied, 316 N.C. 386, 346 S.E.2d 134 (1986) (citations omitted). Thus, the duty to defend arises whenever there is a potential or possible liability to pay based on the allegations in the complaint and is not dependent on the probable liability to pay based on the facts ascertained through trial. See Wilson v. State Farm Mut. Auto. Ins. Co., 92 N.C.App. 320, 374 S.E.2d 446, 448 (1988). The duty does not have to be invoked by every allegation of the complaint. "`Allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer.'" Ames v. Continental Casualty Co., 79 N.C.App. 530, 340 S.E.2d 479, 486, disc. rev. denied, 316 N.C. 730, 345 S.E.2d 385 (1986) (quoting Waste Management, 340 S.E.2d at 377, n. 2).
In early June of 1986, defendant received notice that a malpractice action had been filed in the Superior Court of North Carolina against James Collins, its insured up to May 1, 1976. The complaint in that action alleged in pertinent part as follows:
3. In 1976 and thereafter, the defendant was a licensed and practicing physician in the City of Greensboro, North Carolina specializing in the field of psychiatry. During 1976, the plaintiff was suffering from a mental and emotional illness and consulted with the defendant as her physician and the physician-patient relationship was established.
4. As a part of her treatment by the defendant in 1976 and thereafter, the plaintiff was encouraged by the defendant to confide in him and to place in him her confidence and trust. The plaintiff did confide in the defendant and placed her confidence and trust in him and became mentally and emotionally dependent upon him as her psychiatrist. While the physician-patient relationship existed, and by means of his psychiatric treatment of the plaintiff, the defendant induced and caused the plaintiff to engage in sexual conduct with him. In so doing, the defendant manipulated and abused the physician-patient relationship and caused the plaintiff to engage in a detrimental course of conduct in which, absent this special relationship, she would not otherwise have engaged. In addition, the defendant failed to adequately monitor the plaintiff's mental and physical condition and failed to see that she received adequate psychiatric care.
5. The defendant's treatment of the plaintiff was not in accordance with standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities and the defendant was thereby negligent in his treatment of the plaintiff and committed medical malpractice which was a proximate cause of the injuries and damages sustained by the plaintiff.
Bonnie Carol Gwyn v. James Evans Collins, M.D., 85 CVS 7987, (Oct. 23, 1985). Succinctly, the complaint alleged medical malpractice arising out of Dr. Collins' sexual relations with Bonnie Gwyn and his failure to provide adequate psychiatric care beginning in 1976 and continuing thereafter.[1] *1178 Vigilant's policy was an "occurrence policy" providing professional liability coverage for injuries occurring within its policy period and arising out of the rendering of or failure to render professional services. Accordingly, under the comparison test, the facts as alleged in the complaint demonstrated a possibility that defendant's policy covered the alleged injury, which sufficed to impose a duty to defend. 7C J. Appleman Insurance Law and Practice § 4683.01 (1979 & Supp.1984).
Shortly after Bonnie Gwyn's case settled, H.N. Gwyn instituted his action against Dr. Collins. His complaint contained the following relevant allegations:
6
After accepting plaintiff's wife as his patient, in secret and unknown to plaintiff, and carefully and deliberately hidden from the plaintiff by the defendant, the defendant began, for his own gratification of his own base desires, wrongfully and maliciously to urge upon the plaintiff's wife sexual activities with the defendant as purported therapy for her mental and emotional problems, and he used his position of trust and confidence as her physician and psychiatrist to persuade her on numerous occasions to engage in various sexual activities and intercourse with him, and without the plaintiff's knowledge or consent, and all being by the defendant deliberately concealed and hidden from plaintiff so that the plaintiff did not and could not discover said acts and that they were the cause of the harm, injuries and dammages [sic] set forth in this complaint until September, 1981.
7
These acts by the defendant were continued over a long period of time during the years of 1976 and 1977, and were done with actual malice and actual intent to harm and to damage the plaintiff and his spouse, and with reckless indifference to the likelihood that his acts would cause the alienation and destruction of the love and affection existing between the plaintiff and his wife, as well as severe emotional and mental suffering and distress to both the plaintiff and his wife, and with the knowledge that his acts were in violation of the code of ethics and standards of his profession as a medical doctor and psychiatrist, and with the knowledge that his conduct would cause great harm and damage to the plaintiff and his wife, all in order to pander to his own, the defendant's base desires and lusts.
Henry Nathan Gwyn v. James E. Collins, 87 CVS 4429 (April 22, 1987). Like the allegations in Bonnie Gwyn's complaint, H.N. Gwyn's complaint alleged a possibility that injury occurred during the coverage period, thereby imposing a duty to defend on defendant as well.
In arguments before the Court, counsel for defendant pointed out that defendant's policy defines occurrence as "injury," and contended vigorously that any injury could not have occurred earlier than any wrongful act committed by Dr. Collins. Based on this assertion defendant argued that the timing of the wrongful acts is an issue appropriate for consideration by a jury. However, in asserting this argument, defendant disregards the "comparison test" and assumes that in originally determining that no duty to defend existed, defendant could properly rely upon information outside the complaint in the form of depositions and other materials submitted with notice of the suit.
*1179 The Court is persuaded by the rule of Waste Management and Ames that the only basis for defendant's assessment of a duty to defend in this case was a comparison of the complaints to the policy. Once a complaint implicates the possibility of coverage, an insurer may not exonerate itself by preliminarily determining that no coverage actually exists despite the allegations of the complaint. Contrary to defendant's assertion, a preliminary investigation may only impose a duty to defend where none is clearly imposed by the allegations of the complaint.
Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage....
In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend "groundless, false or fraudulent" lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend.
Waste Management, 340 S.E.2d at 377-8 (citations omitted). The duty of an insurer to defend is expansive and is not premised upon the existence of a duty to pay; it is excused only if the facts alleged in the complaint do not even arguably fall within the policy coverage and an independent investigation reveals no extrinsic facts demonstrating coverage.
[T]he provision for defense of suits is useless and meaningless unless it is offered when the suit arises. To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make this provision a hollow promise and mean a return to the old indemnity contacts which is not within the contemplation of the parties. There are many principles of law that support the above position such as the "doctrine of reasonable expectations". The uncertainty in regard to payment is immaterial to the question of defense ...
7C J. Appleman Insurance Law and Practice § 4684 (1979 & Supp.1984). In this motion for summary judgment, the language of the insurance policies and the contents of the underlying complaints are not controverted. Hence, no issue of fact exists regarding the only inquiries which the comparison test allows. Accordingly, the Court finds as a matter of law that the complaints in the underlying actions, when compared with defendant's policy of liability insurance, clearly imposed a duty to defend upon defendant.
The Court further finds that defendant breached its duty to defend by failing to offer a defense promptly upon notification of the underlying claims filed against its insured. The record in this case indicates that defendant received notice of the lawsuits against Collins on June 9, 1986. (Deposition of Carol Schrader, Exhibit 1). On June 11, 1986, Collins' attorney sent a second letter notifying defendant of the action then pending against Collins. (Deposition of Carol Schrader, Exhibit 3). On September 3, 1986, defendant declined to defend on the basis that the complaint, although vague, alleged acts that did not occur within its policy term. Defendant made its determination based on a consideration of the underlying complaint and other materials including depositions and office ledgers. (Deposition of Carol Schrader, Exhibit 16). On March 25, 1989, Bonnie Gwyn executed a release of her claims against Collins in return for a payment of $425,000. Defendant offered to contribute $50,000 to the settlement on the condition that plaintiff agree to drop any claims it might have against defendant for reimbursement, but otherwise did not participate in settlement of the suit. (Deposition of Carol Schrader, pp. 66-7).
Shortly thereafter, H.N. Gwyn refiled his lawsuit against Collins. On April 27, 1987, defendant received notice of the pending *1180 suit. (Trial Brief of Defendant, p. 5). The parties initiated negotiations to determine what defense obligations defendant owed to Collins. No agreement was reached.[2] On May 4, 1989, H.N. Gwyn's lawsuit was settled. (Trial Brief of Defendant, p. 5). Under these facts there remains no issue that defendant, when confronted with notice of the liability actions filed against its insured, refused to defend. (Deposition of Carol Schrader, p. 36). Regarding Bonnie Gwyn's claim, defendant opted to deny a defense and then "sit back and wait and see." (Deposition of Carol Schrader, Exhibit 20).
Only three options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.
Maneikis v. St. Paul Ins. Co. of Illinois, 655 F.2d 818, 821 (7th Cir.1981). An insurer may not "simply refuse to defend and wait to be sued by [its] insured." Id. at 822. Applying the language of Waste Management it is equally clear that defendant's refusal to defend in both actions was wrongful and that it constituted a breach of the insurance contract.
Having determined that a duty to defend existed and that defendant breached that duty, the Court now turns to the remaining issues. Defendant, contending that a jury question exists regarding the timeliness of the notice by its insured of the underlying suits, alleges that the insured delayed giving notice in bad faith and that defendant was materially prejudiced by the delay. See Great American Insurance Co. v. C.G. Tate Const., 303 N.C. 387, 279 S.E.2d 769 (1981); Great American Insurance Co. v. C.G. Tate Const., 315 N.C. 714, 340 S.E.2d 743 (1986). However, the Court determines, as a matter of law, that defendant, having waived its policy notice requirements, is precluded from raising improper notice as a defense.
In Davenport v. Travelers Indemnity Co., 283 N.C. 234, 195 S.E.2d 529 (1973), the North Carolina Supreme Court stated:
The policy provision that `If claim is made or suit is brought against the insured he shall, immediately forward to the company every demand, notice, summons or other process received by him or his representative' is a valid stipulation, and unless the insured or his judgment creditor can show compliance with the requirement, the insurer is relieved of liability. Moreover, an injured party who obtains judgment against the insured has no greater rights against the insurer than the insured.
However, failure to give notice or immediately forward summons or other process received by the insured may be waived by denial of liability on other grounds. The rationale of this rule is that denial of liability on other grounds is generally regarded as saying that payment would not have been made had the policy provisions been complied with and that the law will not require a vain thing.
Consistent with this rule is the rule recognized in most jurisdictions that the unjustified refusal of the insurer to defend an action against the insured on the ground that the claim on which the action is based is outside the policy coverage deprives the insurer of its right to insist upon compliance with a policy provision requiring forwarding of summons or other process received by the insured.
Id., 195 S.E.2d at 532-33.
A subsequent North Carolina Court of Appeals opinion, Taylor v. Royal Globe Ins. Co., 35 N.C.App. 150, 240 S.E.2d 497, review denied, 294 N.C. 739, 244 S.E.2d 156 (1978), cites Davenport and states that "the rule in North Carolina is that the *1181 denial of liability on another ground operates as a waiver of the notice requirements, being regarded as a statement that payment would not be made even though policy provisions had been complied with." Taylor, 240 S.E.2d at 499.[3] There, plaintiffs sought to recover payment from their insurer for the cost of repairing their damaged airplane. Although the insurance policy required that notice of loss be given to the insurer "as soon as practicable," plaintiffs waited over eight months before notifying the insurer. The court found that the dilatory notice was a breach of the policy condition, and that defendant, despite the general rule, did not waive the notice requirements. Defendant fell outside the general rule because it alleged improper notice from the very beginning as a ground for denial in its letter denying coverage to plaintiffs. Id. at 499. The court stated that the insurer at no time had abandoned the defense of failure to fulfill the condition of timely notice. See Annotation, Liability Insurance: Clause With Respect to Notice of Accident or Claim, 18 A.L.R.2d 443 (1951, Supp.1985, 1989).
The instant case, unlike the scenario in Taylor, falls within the general rule. A search of the record reveals that defendant, in its correspondence with Collins' attorney during the summer of 1986 when it originally denied a defense based on lack of coverage, failed to cite insufficient notice as a ground for denying liability. (Deposition of Carol Schrader, Exhibits 8, 9, 10, 14, 15, 19). It was not until March 19, 1987, four days before the trial of Bonnie Gwyn's case, when defendant procured counsel under a reservation of rights, that defendant mentioned the possibility of prejudice "by not being kept informed or advised in a timely fashion during the progress of this suit." (Carol Schrader Deposition, Exhibit 37). This statement refers not to potential prejudice because of late notice, but prejudice because of a lack of information during the progress of the suit, subsequent to the original notice. The record also indicates that defendant learned of H.N. Gwyn's dismissed suit, and that it would probably be refiled at the same time that it received notice of Bonnie Gwyn's suit. (Deposition of Carol Schrader, Exhibits 1 & 3). Defendant also failed to cite late notice in support of its position that it owed no defense to Collins regarding H.N. Gwyn's claims. (Exhibits to Motion for Summary Judgment, no. 7).
An earlier North Carolina case, Fleming v. Nationwide Ins. Co., 261 N.C. 303, 134 S.E.2d 614 (1964), also stated that failure to assert improper notice waives the defense, but held that the rule did not apply to the facts in that particular case. There, the insurer was allowed to assert late notice because its refusal to defend was based on statements by its insured which clearly demonstrated a lack of coverage. In the subsequent attempt to obtain indemnification, the plaintiff undertook to adduce evidence "showing the facts to be different from those stated to defendant at the outset so as to bring her injury within policy coverage." Id., 134 S.E.2d at 618. In effect, the court was affirming the insurer's original refusal to defend.
In the case at bar, the allegations, as a matter of law, imposed on the defendant a duty to defend. Defendant breached that duty by refusing to defend. Plaintiff, by presenting the underlying complaints as proof of that duty is not "adducing evidence showing the facts to be different from those stated to defendant at the outset." Id. at 618. Accordingly, this case falls within the general rule, and defendant, having denied liability on other grounds, is precluded from now defending on the ground of a violation by the insured of the notice provisions. Id. at 616. See also Lowe v. Fidelity & Casualty Co., 170 N.C. 445, 87 S.E. 250 (1915) (An insurance company cannot deny all liability under a contract of insurance, and then be heard to say, after it has repudiated the contract, that insured should have given it notice *1182 when the action was instituted, so that it would have defended the action in accordance with the terms of the contract); Maneikis, 655 F.2d at 822, 824 (Wrongful refusal to defend precluded subsequent defense of late notice; "if the insurer thought it had received notice too late to trigger its obligations, it should have litigated that fact in a declaratory judgment action, or defended under a reservation of rights, [instead of] simply refus[ing] to defend and wait[ing] to be sued by its insureds ...") (citation omitted).
The Court now addresses the effect of defendant's wrongful refusal to defend. "The first and most obvious of the positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any reasonable compromise or settlement made in good faith by the insured of the action brought against him by the injured party." Nixon v. Liberty Mutual Insurance Co., 255 N.C. 106, 111, 120 S.E.2d 430, 434 (1961).
It is well settled that an insurer who wrongfully refuses to defend a suit against its insured is liable to the insured for sums expended in payment or settlement of the claim, for reasonable attorneys' fees, for other expenses of defending the suit, for court costs, and for other expenses incurred because of the refusal of the insurer to defend.
Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 277 N.C. 216, 176 S.E.2d 751 (1970). See Annotation, Consequences of Liability Insurer's Refusal to Defend, 49 A.L.R.2d 694 (1956 & Supp.1987). The reasoning implicit in these decisions is that payment by an insurer of the settlement costs is proper as an expense of defending the suit.[4] Hence, damages for breach of the contractual duty to defend may include the cost to the insured of settling the claim.
The North Carolina Court of Appeals considered an insurer's wrongful refusal to defend in a context similar to the case at bar in Ames v. Continental Casualty Co., 79 N.C.App. 530, 340 S.E.2d 479, disc. rev. denied, 316 N.C. 730, 345 S.E.2d 385 (1986). In Ames, A.M. Pullen and Company, a public accounting firm, was insured by Continental under an occurrence policy up to 1971, followed by a "claims made" policy with Lloyds. In 1977, Travelers Indemnity Co. filed suit against the insured accounting firm alleging that it relied to its detriment on false and misleading financial statements issued by the insured between 1967 and 1973. The action was settled without the "occurrence policy" insurer's (Continental) participation in the defense or settlement. The insured and the "claims made" insurer (Lloyd's) sought a declaration that Continental had an obligation to defend and contribute to any judgment. After a bench trial, the trial court ordered Continental to contribute to the settlement up to the full amount of its policy limits and to contribute to the defense costs.
Continental argued on appeal that it should not be required to contribute to the settlement because it was not "legally obligated" to indemnify the injured party, and further that the insured had failed to show that any amount of the settlement represented payment for wrongful acts which occurred during Continental's policy period. The Court of Appeals, in requiring contribution by Continental, recognized that an insured's settlement of a claim, being a cost of defending the suit, may trigger an insurer's obligation to contribute under its contractual duty to defend the insured. Hence, breach of the duty to defend obligates *1183 the insurer to pay any reasonable settlement of the claim by the insured.
[C]ontinental had a duty to defend Pullen where on the face of the complaint Pullen was being sued for acts which occurred during the period of Continental's coverage.... When an insurer without justification refuses to defend its insured, the insurer is estopped from denying coverage and is obligated to pay the amount of any reasonable settlement made in good faith by the insured of the action brought against him by the injured party. Nixon v. Insurance Co., 255 N.C. 106, 120 S.E.2d 430 (1961); Maneikis v. St. Paul Ins. Co. of Illinois, 655 F.2d 818 (7th Cir.1981). By denying liability and refusing to defend claims covered by the insurance policy, the insurance company commits a breach of the policy contract and thereby waives the provisions defining the duties and obligations of the insured. Nixon, 255 N.C. at 111, 120 S.E.2d at 435. The trial court was therefore not required to find that Pullen was "legally obligated" to pay damages to Travelers.
In view of Continental's wrongful breach of the policy contract we find it unnecessary to discuss whether Lloyd's has failed to show that any amount of the settlement represents payment for wrongful acts occurring in 1971.
Ames, 340 S.E.2d at 485.
Under the law expressed in Ames, defendant's unjustified refusal to defend renders it liable to contribute to the settlement of the underlying actions.[5] Since settlement is viewed as a cost of defending the suits, it is irrelevant whether the occurrence of injury within the policy period precipitates a duty to pay based on policy coverage. Here, as in Ames, it is not necessary that the Court determine that part of the settlement represents injury which occurred during defendant's policy period.[6]
Accordingly, the Court finds that plaintiff and defendant are equally obligated to contribute to the settlement amounts, subject to relevant provisions in their respective policies. The two policies contain identical "other insurance" clauses, which provide as follows:
When both this insurance and other insurance applies [sic] to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
A. CONTRIBUTION BY EQUAL SHARES
If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
(Affidavit of Carol H. Schrader, Exhibit C; Affidavit of G.E. Smith III, Exhibit 5).
These clauses provide for contribution by equal shares up to the lowest limit of liability *1184 or until the full amount of the loss is paid. Defendant's policy limit is $500,000 for each claim, while plaintiff's limit is $1 million for each claim. The settlement amounts in the two underlying suits are well within the policy limits. Accordingly, the Court determines that defendant is liable for one-half of the total settlement amounts.
The Court also determines that defendant is obligated to contribute to the defense costs incurred by plaintiff in both actions. The Ames court recognized that since both insurers had a duty to defend, defense costs should be shared equally.
When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insured has a duty to defend, whether or not the insured is ultimately liable. Strickland v. Hughes, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968). Furthermore, "allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer." Waste Management of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374 (1986). We have determined Continental was the primary insurer for acts or omissions occurring on or before 30 November 1971. The Travelers' complaint alleged damages as a result of reliance upon financial statements produced by Pullen during the coverage period of the Continental policy. Lloyd's was the primary, and only, insurer for the period following 30 November 1971. The Travelers' complaint also alleged damages arising from the period of the Lloyd's policy coverage. Thus, under North Carolina law, both insurers had a duty to defend Pullen. Id. In view of this fact, we believe that equity dictates that the defense costs be shared among the two insurers.
Ames, 340 S.E.2d at 486.
Plaintiff reasserted at oral argument that it is making no claim that defendant is required to contribute to defense costs incurred prior to the time defendant received notice of the underlying claims. Plaintiff further asserts that the Court should allow defendant a credit to reflect its procurement of an attorney for Collins in the Bonnie Gwyn suit from March 19 to March 25, 1987. Accordingly, the Court determines that the proper amount of defendant's liability for the costs of defense is one-half the sum of defendant's expenses and plaintiff's expenses from the date after which defendant obtained notice.
The Court is unable to determine from the current status of the record three amounts necessary to render a final judgment in this matter. The record does not indicate (1) the amount expended by defendant in providing a defense from March 19 to March 25, 1987 in the Bonnie Gwyn suit, (2) the exact amount of the settlement in the H.N. Gwyn suit, or (3) the final amount expended by plaintiff in defending the H.N. Gwyn suit. The Court requests that the parties confer in good faith and stipulate the appropriate amounts necessary to properly supplement the record and advise the Court of any question as to the reasonableness of the amounts expended. If the parties find it impossible to agree on reasonable figures, the Court will accept documentation supporting their respective positions as to each of the three requested amounts. In either event, subsequent to the appropriate filing by the parties, the Court will render final judgment in this matter.
IT IS, THEREFORE, ORDERED that plaintiff's motion for summary judgment, Rule 56, Fed.R.Civ.P. be, and the same hereby is, GRANTED. A final judgment, consistent with this Memorandum Opinion and Order, will be entered subsequent to the parties' filing of the necessary documents.

ON MOTION FOR PREJUDGMENT INTEREST
This matter is before the Court for final judgment pursuant to a previously filed Memorandum Opinion and Order. In that Order, the Court requested that the parties stipulate the appropriate amounts necessary *1185 to enable the court to enter final judgment. See Memorandum Opinion and Order, C-87-395-G, August 18, 1989. The parties have supplemented the record as requested, and the matter is ready for final judgment.
The Final Pretrial Order and a Stipulation between the parties indicate that the amounts of settlements and defense costs relevant to the calculation of final judgment in this matter were reasonable and necessary. The parties have stipulated that defendant expended $6,070.00 in defense against the claims of Bonnie Gwyn. The Court finds that plaintiff expended $123,818.00. The Court determines that one-half those total costs, less the sum expended by defendant, amounts to $58,874.00. Plaintiff is also entitled to one-half the costs expended in defense against the claims of H.N. Gwyn. The parties have stipulated those costs to be $30,190.01. One-half of that amount is $15,095.01.
Plaintiff is further entitled to one-half the total costs of settling the two underlying actions. The settlement amount in the Bonnie Gwyn case was $425,000.00. The H.N. Gwyn case settled for $85,810.00. One-half the sum of these two amounts is $255,405.00.
Plaintiff has filed a motion for prejudgment interest on all amounts due from the date of the original expenditures through the date of judgment. Although "[p]rejudgment interest has been granted under certain limited circumstances where the amount of the claim is obvious or easily ascertainable from the contract or insurance policy[,] as a general rule, North Carolina courts do not recognize the granting of prejudgment interest on unliquidated damages." Lazenby v. Godwin, 60 N.C. App. 504, 299 S.E.2d 288, 291 (1983) (citations omitted). See Occidental Life Ins. Co. v. Pat Ryan and Assoc. Inc., 496 F.2d 1255 (4th Cir.), cert. denied, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974) (award of prejudgment interest lies within discretion of trial court and such interest is not awarded as a matter of course).
The court finds that an award of pre-judgment interest is not appropriate in this case. The settlement amounts in the underlying actions, offsets claimed by the parties, and accruing defense costs all combined to constitute the final amount of damages. These uncertain constituents rendered the damages in this case unliquidated. The Court further determines that equity would not condone the imposition of prejudgment interest in this case where it is not clear that defendant, in originally denying coverage, acted in bad faith or without an arguable basis. See Square Const. Co. v. Washington Metro Area Transit, 800 F.2d 1256 (4th Cir.1986) (court denied prejudgment interest on equitable grounds). Accordingly, in its discretion, the Court will deny plaintiff's motion for prejudgment interest and enter final judgment in this matter, awarding plaintiff the amount of $329,374.01.
IT IS, THEREFORE, ORDERED that plaintiff's Motion for Prejudgment Interest be, and the same hereby is, DENIED.
A final judgment will be entered contemporaneously with this opinion.
NOTES
[1] It is a "generally recognized proposition that sexual intimacy with a patient, induced by a marriage or other counselor, is a form of malpractice permitting recovery of damages for emotional distress and other harm resulting from the malpractice." The basis of the malpractice is the "trust relationship that arises from such counseling services, which are designed to improve the mental and emotional well-being of the patient." Weaver v. Union Carbide, 378 S.E.2d 105 (W.Va.1989). Evidence that a psychiatrist engaged in sex with a patient's wife sustained a finding that the psychiatrist committed medical malpractice in the treatment of his patient. Mazza v. Huffaker, 61 N.C.App. 170, 300 S.E.2d 833, appeal denied, 309 N.C. 192, 305 S.E.2d 734 (1983). Based on the notion that sex with a patient constitutes malpractice, coverage appropriately attaches under the professional liability portion of a liability policy.
[2] Defendant offered a defense on the condition that plaintiff and Collins would agree to execute a non-waiver agreement. When defendant received no response, it withdrew its offer. (Exhibits to Motion for Summary Judgment, Nos. 6, 7).
[3] Waiver requires (1) the existence of a right, advantage or benefit at the time of the alleged waiver; (2) knowledge, either constructive or actual, of the existence of the right or benefit on the part of the insurer, and (3) an intention by the insurer to relinquish it. Yale v. National Indem. Co., 664 F.2d 406 (4th Cir.1981).
[4] This notion is consistent with language of the 7th Circuit in an opinion cited by the North Carolina Court of Appeals in Ames.

[O]nly three options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend. Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee.
Maneikis v. St. Paul Ins. Co. of Illinois, 655 F.2d 818, 821 (7th Cir.1981).
[5] The Court urged the parties to negotiate an equitable settlement of their differences. They were unable to reach an agreement, however, because the defendant adamantly maintained the position that under its "occurrence" policy it could be liable only for the sexual misconduct, if any, that occurred prior to May 1, 1976, when its policy expired.
[6] An insurer required to contribute to the settlement of an underlying claim based on its wrongful refusal to defend remains able to challenge the reasonableness of the settlement and whether it was made in good faith. Nixon v. Liberty Mutual Ins. Co., 255 N.C. 106, 120 S.E.2d 430, 434 (1961); Ames v. Continental Cas. Co., 79 N.C.App. 530, 340 S.E.2d 479 (1986). The parties have stipulated that the amounts expended in defending against the claims of Bonnie Gwyn and in settling Bonnie Gwyn's case were reasonable in amount. (Final Pretrial Order, pp. 9-10). However, the Court will defer consideration of the reasonableness and good faith questions as to defense costs and settlement in the H.N. Gwyn suit until the parties supplement the record to show the relevant amounts.